IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD DEBLOIS,
*Plaintiff*,

v.

Civil Action No. ELH-20-1816

CORIZON HEALTH, INC., et al.,
*Defendant*.

## MEMORANDUM

Plaintiff Richard DeBlois is a Maryland prisoner.  Through counsel, plaintiff filed suit against Corizon Health, Inc. ("Corizon") and Wexford Health Sources, Incorporated ("Wexford"). ECF 1 (the "Complaint").  The Complaint asserts a single claim of "negligence, medical malpractice."  *Id.* ¶¶ 46-50.[1]  It concerns the provision of medical care to Mr. DeBlois during his incarceration at the Baltimore City Correctional Center and in Jessup, Maryland.  *Id.* ¶¶ 1, 11.

Notably, Wexford provided health care to plaintiff from 2014 through 2018.  *Id.* ¶ 13. Corizon "took over the provision of health care" in 2019.  *Id.* ¶ 6; *see id.* ¶ 12.

---

[1] Jurisdiction is founded on diversity, under 28 U.S.C. § 1332(a).  The amount in controversy requirement is satisfied here, as plaintiff demands damages "in excess of $75,000." *Id.* at 13.  With respect to the parties' citizenship, the Complaint states that DeBlois "was at all times relevant to the occurrence complai[n]ed of herein incarcerated in Jessup, MD, or in Baltimore City, MD."  *Id.* ¶ 11.  And, Mr. DeBlois alleges that Wexford is incorporated in Delaware and that Corizon is incorporated in Pennsylvania.  *See id.* ¶¶ 12-13.  However, plaintiff does not allege the location of the defendants' principal places of business.

By Order of November 10, 2020 (ECF 25), I ordered each defendant to disclose its principal place of business.  Thereafter, Wexford informed the Court that it is incorporated in Florida and that its principal place of business is in Pennsylvania.  ECF 26.  And, Corizon disclosed a principal place of business of Tennessee.  ECF 27.  Accordingly, there is complete diversity among the parties.

Mr. DeBlois contends that defendants breached the duty of care owed to plaintiff in failing properly to assess and treat plaintiff's "kidney stone and other internal conditions" and in failing to "provide proper follow-up care" after plaintiff underwent surgery to treat kidney stones and replace bilateral ureteral stents. *Id.* ¶ 48; *see id.* ¶¶ 1-7, 16-45. In particular, he alleges that for fifteen months, from 2015 to 2016, Wexford "ignored" and "apparently forgot[]" to ensure that plaintiff underwent surgery to remove his ureteral stents. *Id.* ¶ 24; *see id.* ¶¶ 19-23. According to plaintiff, this failure to act caused pain, suffering, and the formation of additional kidney stones, which in turn necessitated multiple procedures. *See id.* ¶¶ 26-27, 30-33. Further, DeBlois avers that Corizon "is liable" for "continued negligent treatment . . . as of January 1, 2019." *Id.* ¶ 38.

Two exhibits are appended to the Complaint. ECF 1-2; ECF 1-3. One of them is the "Certificate of Qualified Expert" of Jay Copeland, M.D., dated April 6, 2020. *See* ECF 1-3 (the "Copeland Certificate"). The Complaint relies on the Copeland Certificate. *See* ECF 1, ¶¶ 16-37.

Wexford answered the suit. ECF 8. Corizon moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 6), supported by a memorandum of law. ECF 6-1 (collectively, the "Motion" or "Motion to Dismiss"). Plaintiff opposes the Motion (ECF 20), supported by exhibits. ECF 20-1; ECF 20-2. Corizon replied. ECF 22.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Background[2]

Mr. DeBlois has been a Maryland detainee or prisoner since 2014. *Id.* ¶¶ 13, 16. On November 12, 2014, while incarcerated at an unspecified institution, plaintiff "underwent a left

---

[2] Given the posture of this case, I must assume the truth of the facts alleged in the suit, as discussed *infra*. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). Further, the Court may

percutaneous nephrostolithotomy and exchange of his existing right ureteral stent at the University of Maryland." *Id.* ¶ 16.[3]  Plaintiff was "scheduled to return for surgery" on "large renal calculi," *i.e.*, kidney stones. *Id.* ¶ 17.[4]

On December 1, 2014, a doctor employed by Wexford wrote in Mr. DeBlois's medical record: "[I]nmates must not be informed of the date, time, and location of proposed treatment and possible hospitalization." *Id.* ¶ 18.

Mr. DeBlois underwent the scheduled surgery "at the University of Maryland" on December 4, 2014. *Id.* ¶ 19.  In surgery on two consecutive days, plaintiff "had a right percutaneous nephrostolithotomy and replacement of his right ureteral stent" and "a left percutaneous nephrostolithotomy and replacement of his left ureteral stent." *Id.* ¶ 19.

Plaintiff was discharged on December 8, 2014. *Id.* ¶ 20.  His "discharge summary indicated that he was to return to the urology clinic on or about January 8, 2015 for cystoscopy and removal of bilateral ureteral stents." *Id.*  On January 7, 2015, plaintiff "had an x-ray that reported bilateral ureteral stents." *Id.* ¶ 21.  However, the procedure to remove the stents, which was scheduled for the following day, did not occur. *Id.* ¶ 22.

---

consider documents attached to the Complaint or Motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] Although the Complaint does not define "nephrostolithotomy," it is defined in the Motion to Dismiss as a "procedure to remove kidney stones."  ECF 6-1 at 2, n.1.  Plaintiff does not dispute this definition in his opposition to the Motion.

According to the website of the National Library of Medicine, "nephrostolithotomy" and "nephrolithotomy" are interchangeable terms. *Percutaneous kidney procedures*, NIH, NATIONAL LIBRARY OF MEDICINE, MEDLINEPLUS, https://medlineplus.gov/ency/article/007375.htm; *see* Fed. R. Evid. 201 (permitting a court to take judicial notice of adjudicative facts that are "not subject to reasonable dispute").

[4] The Complaint uses "renal calculi" or "calculi" and "kidney stones" interchangeably. *See, e.g.*, ECF 1, ¶¶ 4-5, 37-38.

The stents were not removed until August 2017.  *Id.* ¶ 33.  According to plaintiff, the failure to remove the stents for such an extended period caused him pain and gave rise to serious medical complications.  *See, e.g.*, *id.* ¶¶ 22, 26, 27.  For instance, plaintiff "developed voiding symptoms, flank pain, hematuria," and urinary tract infections.  *Id.* ¶ 22.  In addition, "calcific debris was deposited on DeBlois' stents, and over time, became many large calculi within his kidneys and bladder."  *Id.* ¶ 26.  These calculi "grew on the internal and external portions of the stents that were within the ureters."  *Id.* ¶ 27.  They caused additional pain, as well as "infection, renal obstruction and the possibility of severe renal damage."  *Id.*

Mr. DeBlois alleges that he was "not made aware that he had bilateral stents and that they were the source of his ongoing pain and other issues reported to" his prison health care providers. *Id.* ¶ 24.  However, the Complaint alleges the existence of medical records from 2015 and 2016 that document exchanges between plaintiff and Wexford personnel about the stents.  In particular, plaintiff alleges that a "note" from June 6, 2015, stated: "'[H]ematuria occurs only when he does abdominal crunches and he . . . states that he can feel his stents when he does this activity.'"  *Id.* ¶ 22(a).  And, a "note" from February 5, 2016 stated: "'[P]atient states stents are still in place and movement causes pain.'"  *Id.* ¶ 22(b).

On April 12, 2016, Dr. Dolph Druckman, a Wexford "employee and/or agent," noted "Mr. DeBlois's "history of stones, multiple UTI's, and no obvious follow up at the University of Maryland."  *Id.* ¶ 22(c).  Plaintiff underwent X-rays, which showed "bilateral renal calculi and stents."  *Id.*  Thereafter, a "CT scan" revealed bilateral stents with renal, ureteral, and bladder calculi."  *Id.* ¶ 22(e).  In late October 2016, "a consult was placed for the patient to have surgery to address the stents."  *Id.* ¶ 22(g).

Mr. DeBlois "underwent a laser lithotripsy of bladder calculi" on January 19, 2017.  *Id.* ¶ 28.  After the surgery, plaintiff "went into septic shock necessitating the placement of bilateral percutaneous nephrostomy tubes to drain the kidneys."  *Id.* ¶ 29.  Plaintiff also received a "second ureteral stent . . . on the left."  *Id.*  On February 22, 2017, plaintiff "had his nephrostomy tubes exchanged for new tubes with attached stents. . . .  He was discharged with a PICC line to deliver an antibiotic for 6 weeks due to the sepsis."  *Id.*

In April and June 2017, plaintiff underwent two procedures to remove kidney stones.  *Id.* ¶¶ 30, 32.  In July 2017, he received "a bilateral ureteroscopy with laser lithotripsy."  *Id.* ¶ 32.  By August 2017, "DeBlois was finally free of drainage tubes, either ureteral stent or nephrostomy."  *Id.* ¶ 33.  However, "not all of the renal calculus that formed on the stents could be removed," which "may lead to the formation of larger calculi."  *Id.* ¶ 37.

According to Mr. DeBlois, Wexford is responsible for the "failure to remove [plaintiff's] bilateral ureteral stents on January 8, 2015, or soon thereafter."  *Id.* ¶ 35; *see id.* ¶ 36.  That failure constituted a "breach of the applicable standard of care" and was "the direct and proximate cause" of pain, suffering, and extensive medical intervention that plaintiff had to undergo.  *Id.* ¶ 36.

As mentioned, Corizon "took over the provision of health care" in 2019.  *Id.* ¶ 6; *see id.* ¶ 12.  As to Corizon, Mr. DeBlois claims: "The occurrences complained of herein have resulted in ongoing and chronic kidney stone and kidney related health issues, which continue today and remain untreated, for which continued negligent treatment health care provider Corizon is liable as of January 1, 2019."  *Id.* ¶ 38.  And, plaintiff adds: "Wexford's and Corizon's conduct through its agents, servants, and employees is continuous and ongoing."  *Id.* ¶ 43.

Mr. DeBlois filed a medical malpractice claim with the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO").  ECF 1-2.  Suit was filed after Mr. DeBlois "elected a Waiver

of Arbitration," pursuant to Maryland Code (2013 Repl. Vol., 2019 Supp.), § 3–2A–06B of the Courts & Judicial Proceedings Article.  *See* ECF 1-2.

## II.  Legal Standard

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  Of course, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal

theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy

sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

Plaintiff appended to the Complaint the Copeland Certificate (ECF 1-3) and the Order of Transfer from the HCADRO. ECF 1-2. The Complaint explicitly incorporates both exhibits. *See* ECF 1, ¶¶ 9, 16. Therefore, I may consider them in resolving the Motion. *See Goines*, 822 F.3d at 166.

### III. Discussion

Corizon argues that Mr. DeBlois fails to state a claim as to Corizon. According to Corizon, neither the Complaint nor the Copeland Certificate allege any facts concerning Corizon's provision

of health care to plaintiff after January 1, 2019.  ECF 6-1 at 4-6, 8.  In addition, Corizon contends

that the Copeland Certificate is deficient under Maryland law.  *Id.* at 9-11.  Mr. DeBlois opposes

Corizon's arguments at every step.  *See* ECF 20 at 1-2.

Under Maryland law, "a 'medical malpractice tort' is a 'traditional negligence claim.'"

*Am. Radiology Servs., LLC v. Reiss*, 470 Md. 555, 579, 236 A.3d 518, 531 (2020) (citation

omitted).  It is well settled that to prove negligence, a plaintiff must establish: "(1) the defendant's

duty based on the applicable standard of care, (2) a breach of that duty, (3) that the breach caused

the injury claimed, and (4) damages."  *Id.* (citation omitted).

The Complaint fails plausibly to allege negligence as to Corizon.  Mr. DeBlois asserts that

Wexford was responsible for providing medical care in the facilities where he was incarcerated

between 2014 and December 31, 2018.  *See* ECF 1, ¶¶ 6, 13.  Corizon replaced Wexford as of

January 1, 2019.  *Id.* ¶ 12.  The Complaint's factual allegations form a narrative centered primarily

on events between 2014 and 2018.  The references to developments after 2018 are conclusory.  *See*

*id.* ¶¶ 6, 38.  Plaintiff fails to allege that any given act or omission of Corizon breached the

applicable standard of care or caused damages.  *See id.* ¶¶ 6, 38, 43.  In sum, plaintiff's allegations

as to Corizon amount to "'naked assertions' of wrongdoing" and are therefore "insufficient to state

a claim for relief."  *Francis*, 588 F.3d at 193 (4th Cir. 2009) (citation omitted).

Moreover, the Copeland Certificate does not aid plaintiff.  To the contrary, it strengthens

Corizon's Motion.  Like the Complaint, the Copeland Certificate does not set forth any facts

concerning any acts or omissions of any health care provider after December 31, 2018.  *See* ECF

1-3.[5]  Thus, the document fails to "include information necessary for evaluating whether [Corizon]

_____

[5] The Copeland Certificate appears to be missing its fourth page, which neither plaintiff
nor Corizon has acknowledged.  *See* ECF 1-3 at 3-4.

breached the standard of care." *Dunham v. Univ. of Maryland Med. Ctr.*, 237 Md. App. 628, 646, 187 A.3d 752, 762 (Md. Ct. Spec. App. 2018), *cert. denied*, 461 Md. 507, 194 A.3d 948 (2018).

To be sure, Mr. DeBlois cites portions of the Copeland Certificate in his opposition.  But, none of the cited portions identify any occurrences, actions, errors, or omissions as of January 1, 2019, when Corizon took over for Wexford.  *See* ECF 20 at 23-24.

Further, Mr. DeBlois appears to suggest that Corizon may be liable for Wexford's negligence.  For instance, he asserts: "*Defendant Corizon* becamze liable for the *continuing failure* to treat Plaintiff on and after January 2019."  ECF 20 at 8 (emphasis in original).  Plaintiff also emphasizes that Wexford employees "*became*" Corizon employees on January 1, 2019, *id.* (emphasis in original), and that "Corizon *assumed responsibility* for administering an already-existing system of care."  *Id.* at 12 (emphasis in original).  Yet, in his opposition, plaintiff does not explicitly articulate that theory, let alone explain how the Complaint or the law supports it.  And, Mr. DeBlois clearly states that Corizon's duty to plaintiff did not arise until January 1, 2019.  *Id.* at 9.  That date is long after the underlying events at issue.  Thus, there are no facts alleged that, if true, would render Corizon liable for the negligence of Wexford.

Corizon and Mr. DeBlois also disagree as to whether the Maryland rule requiring a certificate of qualified expert to attribute negligence to an individual health care provider applies to the Copeland Certificate.  *See* ECF 6-1 at 9; ECF 20 at 16-22.  In addition, Corizon and plaintiff disagree as to whether plaintiff's expert is qualified to opine on this case, given his training and credentials.  *See* ECF 6-1 at 9-11; ECF 20 at 30-33; ECF 22 at 5-7.  In light of my conclusion, I need not address the other disputes concerning the sufficiency of the Copeland Certificate.

### IV.  Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 6), without prejudice, and with leave to amend.

An Order follows.

Date: November 30, 2020

/s/
Ellen L. Hollander
United States District Judge