**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **RICHARD DeBLOIS**<br>901 Greenmount Ave.<br>Baltimore, Maryland 21202<br><br>   *Plaintiff,*<br><br> v.<br><br>**CORIZON HEALTH, INC.**<br> Serve:  The Corporation Trust, Inc.<br>   2405 York Road, Ste. 201<br>   Lutherville-Timonium, MD<br>   21093<br><br>   *Defendant.* | Case No.: <u>1:20-cv-01816-ELH</u><br><br>***Jury Trial Demanded*** |

<u>**AMENDED COMPLAINT AND JURY DEMAND**</u>

Comes now the Plaintiff, Richard DeBlois, by and through his attorneys Cary J. Hansel and the firm of Hansel Law, P.C., and Samuel M. Shapiro, and the Law Office of Samuel M. Shapiro, P.A. and sues the above-named Defendant and in support thereof states as follows:

<u>**INTRODUCTION**</u>

1)  On January 1, 2019, Plaintiff Richard DeBlois ("**Plaintiff**") was suffering from severe, chronic kidney issues resulting from a prior failure to timely remove bilateral ureteral stents. Plaintiff, an inmate at Baltimore City Correctional Center, required considerable medical care and treatment to address his condition, including, but not limited to, surgeries to address calculi that had formed on implanted stents, and other complications that continued to arise as the result of the untreated formed calculi. Plaintiff's condition continued to worsen with each day that he went without adequate medical treatment, and, as a result, Plaintiff continually suffered, and continues to suffer, significant pain and suffering.

2)       Defendant Corizon assumed responsibility for the medical care and treatment of all inmates housed by DPSCS on January 1, 2019, which included Plaintiff. Thus, Defendant Corizon assumed the duty to provide adequate medical care to treat Plaintiff's severe and chronic kidney condition, which included, but is not limited to, any further surgeries Plaintiff would need to address the formed calculi.

3)       Despite Defendant Corizon knowing the extent of Plaintiff's condition and the desperate need for adequate medical care to address Plaintiff's condition and ensure that Plaintiff's condition did not continue to deteriorate, Defendant Corizon and its agents and/or employees did not provide Plaintiff with any of the care that Plaintiff needed—including, but not limited to, the surgeries to address the formed calculi.

4)       Plaintiff continually tried to request that Defendant Corizon and its agents and/or employees provide medical care and treatment to address his severe and worsening condition, and Plaintiff complained to Defendant Corizon and its agents and/or employees on numerous occasions of the pain and suffering that Plaintiff suffered as a result of his condition. However, despite Plaintiff's continual requests and numerous complaints, Defendant Corizon and its agents and/or employees refused to provide Plaintiff with adequate medical care.

5)       As a result, Plaintiff has suffered, and continues to suffer, permanent internal damage, regular and severe pain in Plaintiff's abdominal area, limitations on Plaintiff's activities, mental anguish, embarrassment, shame, humiliation, and loss of enjoyment of life.

## JURISDICTION AND VENUE

6)       This Court possesses jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

7)      This Court also possesses jurisdiction under Md. Code, Cts. & Jud. Proc., § 3-2A-06B, as this case has been transferred from the Maryland Health Claims Alternative Dispute Resolution Office by way of Plaintiff's waiver of arbitration.  *See* Exhibit A (Order of Transfer).

8)      Venue is appropriate in this forum pursuant to 28 U.S.C. 1391(b)(2), as all the events and omissions giving rise to the claim occurred in this judicial district.

## PARTIES

9)      Plaintiff Richard DeBlois ("**Plaintiff**") is, and was at all times relevant to the occurrence complained of herein, incarcerated under the custody of the Maryland Department of Public Safety and Correctional Services ("**DPSCS**") in Jessup, Maryland, or in Baltimore, Maryland.

10)      Defendant Corizon Health, Inc. ("**Defendant Corizon**") is a *sui juris* corporation created under the laws of Delaware and operating a health care business in the State of Maryland. At all times relevant to the occurrence complained of herein after December 31, 2018, Defendant Corizon had a contract with DPSCS to provide medical care and treatment and utilization management services for all inmates in DPSCS facilities, including, but not limited to, facilities where Plaintiff was housed after December 31, 2018. On January 1, 2019, Corizon assumed responsibility for the medical care and treatment of all inmates housed by DPSCS, including Plaintiff. This responsibility included the duty to provide continuing medical care and treatment for conditions already in existence at the time Defendant Corizon assumed the responsibility for the inmates' care.

11)      Corizon has been responsible for providing inmates in DPSCS's custody with comprehensive medical services on and after January 1, 2019, and, in such capacity, Defendant Corizon and its agents, servants and/or employees, medical and administrative staff and

consultants held themselves out as practicing ordinary standards of medical, hospital, radiologic, oncologic, surgical, nursing, and pathologic care. As such, Defendant Corizon and its agents, servants, and/or employees, medical and administrative staff and consultants owed a duty to Plaintiff to render and provide health care within the ordinary standards of medical, surgical, hospital, and nursing care, and to exercise reasonable skill and care in the selection of personnel to provide competent physicians, physicians' assistants, surgeons, technicians, nurses, radiologists, oncologists, pathologists and other medical and administrative personnel, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practices of medicine and surgery, and to supervise and provide its patients with diagnostic and medical services and treatment commensurate with the condition from which the patient suffers and for which patient came under the care of Defendant Corizon.

12)    On and after January 1, 2019, the individuals employed by Wexford Health Services, Inc. ("**Wexford**"), who provided care to inmates in DPSCS's custody prior to January 1, 2019, were retained by Defendant Corizon. Those individuals, who provided medical care and treatment to inmates in DPSCS's custody, including Plaintiff, as Wexford agents and/or employees prior to January 1, 2019, continued to provide medical care and treatment to inmates in the same DPSCS facilities as Defendant Corizon's agents and/or employees after January 1, 2019. Exhibit B ("Olayinka Deposition"). All of these individuals, named and unnamed, were acting within the scope of their employment and as agents, servants, and/or employees of Defendant Corizon in treating, or failing to treat, Plaintiff on and after January 1, 2019.

13)    The individuals who failed to adequately treat Plaintiff after January 1, 2019, include all agents, servants, and/or employees of Defendant Corizon, named and unnamed, who held themselves out to Plaintiff and the general public as experienced, competent, and able

4

physicians, physicians' assistants, nurses, and other health care professionals possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote their time and attention to the treatment of inmates while incarcerated. These individuals had a duty to Plaintiff to render that degree of care and treatment which is ordinarily rendered to those who devote study and attention to the practice of medicine and nursing in a correctional system setting. Each and every individual that failed to adequately provide any treatment to Plaintiff, and who acted as an agent, servant, and/or employee of Defendant Corizon in providing medical care to inmates within DPSCS's custody on and after January 1, 2019, breached that duty of care.

14)     In addition to all the unnamed individuals acting on behalf of Defendant Corizon to provide medical care to inmates within DPSCS's custody, who failed to adequately provide any treatment to Plaintiff for his severe, chronic medical condition, the following individuals failed to provide adequate treatment to Plaintiff: Lum Maximuangu, RNP, Ikanke Edem, RN, Liberatus DeRosa, M.D., Don Elrod, P.A., Jonathan Thompson, MD, Haydee Rawley, RN, Ava Joubert-Curtis, MD, Mahboobeh Memarsadeghi, M.D., Asresahegn Getachew, RMD, Dawn M. Domalik, RN, and Maksed Choudry, MD. These individuals inadequately treated, or completely failed to treat, Plaintiff as agents and/or employees of Wexford prior to January 1, 2019. These individuals continued to inadequately treat, or completely fail to treat, Plaintiff as agents and/or employees of Defendant Corizon on and after January 1, 2019.

## FACTS COMMON TO ALL COUNTS

I.     **The Development of Plaintiff's Severe and Chronic Kidney Condition.**

15)     On or about November 12, 2014, Plaintiff, an inmate in the Maryland state prison system, underwent a left percutaneous nephrostolithotomy and exchange of his existing right

ureteral stent at the University of Maryland.  *See* Exhibit C ("Certificate of Qualified Expert of Jay Copeland, MD") at para. 4.

16)     Plaintiff was known to have bilateral large renal calculi and would require further surgery. Plaintiff was discharged on or about November 13, 2014, and scheduled to return for surgery. *Id.*

17)     On or about December 1, 2014, Dr. Liberatus DeRosa, then an employee of Wexford, noted in Deblois' medical record that Deblois was to return to the University of Maryland in 3 days for further surgery.

18)     Plaintiff underwent the scheduled surgery at the University of Maryland on or about December 4, 2014, and had a right percutaneous nephrostolithotomy and replacement of his right ureteral stent.  The following day, he had a left percutaneous nephrostolithotomy and replacement of his left ureteral stent.  *Id.* at para. 5.

19)     Plaintiff did well post operatively and was discharged on or about December 8, 2014, and his discharge summary indicated that he was to return to the urology clinic on or about January 8, 2015 for cystoscopy and removal of bilateral ureteral stents.  *Id.*

20)     On January 7, 2015, Plaintiff had an x-ray that reported bilateral ureteral stents. Although this x-ray was taken only one day prior to the planned removal of the bilateral ureteral stents, the removal of bilateral stents scheduled for January 8, 2015 never occurred.  *Id.* at para. 6.

21)     As a result of the failure to remove the bilateral stents, Plaintiff developed voiding symptoms, flank pain, hematuria, and UTI.  Many notes in Plaintiff's medical record intermittently document the symptoms that resulted from the breach, including, but not limited to:

a)      A note on or about June 6, 2015, by Monica Stallworth, MD, indicating that "hematuria occurs only when he does abdominal crunches and he can states that he can feel his stents when he does this activity;"

b)      A note on or about February 5, 2016, by Susan Myers, RN, indicating that "patient states stents are still in place and movement causes pain;"

c)      A note on or about April 12, 2016, by Dolph Druckman, MD, noting Plaintiff's history of stones, multiple UTI's, and no obvious follow up at the University of Maryland, as well as ordering a KUB (plain x-ray of the abdomen) that was reported as showing bilateral renal calculi and stents;

d)      On or about May 24, 2016, Mahboobeh Memarsadeghi, MD noted that Plaintiff had been seen (telemedicine) by Dr. Scipio and that he requested a renal ultrasound and that he would schedule Plaintiff for cystoscopy and stent removal after he received the report;

e)      On or about July 18, 2016, Plaintiff was seen by a urologist who noted bilateral stents, bilateral renal calculi, and bladder calculi, as well as ordered a CT scan which revealed bilateral stents with renal, ureteral and bladder calculi;

f)      On or about September 22, 2016, Ava Joubert-Curtis, MD, ordered a consult for Plaintiff to be seen by urology; and

g)      Following a telemedicine appointment with Dr. Scipio on or about October 25, 2016, a consult was placed for the patient to have surgery to address the stents.

*Id*. at para. 7.

22)     Plaintiff's need to have the bilateral ureteral stents removal was ignored for fifteen months. *Id*. at para. 8. Plaintiff was not even made aware that he had bilateral stents, or that the bilateral stents were the source of Plaintiff's ongoing pain and other medical issues.

23)     Plaintiff then had to suffer through an additional six-month delay from the time that Dr. Druckman initiated a referral to the urologists at University of Maryland to when Plaintiff was scheduled for admission to the hospital for surgery.  *Id*.

24)     Had Plaintiff's treatment not been significantly delayed, Plaintiff's medical issues and severe pain could have been addressed through a minor out-patient procedure that would have left Plaintiff free of kidney stones. Instead, due to the delay, calcific debris was deposited on Plaintiff's stents, and, over time, became many large calculi within his kidneys and bladder.  *Id*. at 9.

25)     In addition, calculi grew on the internal and external portions of the stents that were within the ureters.  As a result, the stents could no longer be removed by simply grasping them through a cystoscope and pulling them out in a procedure that would normally take approximately five minutes.  The stents had to be removed as they caused pain, infection, renal obstruction and the possibility of severe renal damage.  *Id*.

26)     On or about January 19, 2017, Plaintiff, having been finally made aware that his severe medical issues were being caused by renal stents, underwent a laser lithotripsy of bladder calculi.  *Id*. at para. 11.

27)     Following this surgery, Plaintiff went into septic shock necessitating the placement of bilateral percutaneous nephrostomy tubes to drain the kidneys.  A second ureteral stent was placed on the left and then, on or about February 22, 2017, Plaintiff had his nephrostomy tubes exchanged for new tubes with attached stents that were in addition to the retained stents that could

not be removed due to stones on, and within, them.  He was discharged with a PICC line to deliver an antibiotic for 6 weeks due to the sepsis.  *Id*.

28)     On or about April 20, 2017, Plaintiff underwent another procedure, this time a left percutaneous nephrolithotripsy (PCNL) to remove calculi from the kidney.  *Id*.

29)     On or about June 22, 2017, yet another right PCNL was performed, and, on or about June 29, 2017, a repeat left PCNL was done to remove remaining stones.  *Id*.

30)     Additionally, a bilateral ureteroscopy with laser lithotripsy was performed on July 24, 2017.  At the time of ureteroscopy, stents are almost always placed.  *Id*.

31)     It was not until on or about August 2017 that Plaintiff was finally free of drainage tubes, either ureteral stent or nephrostomy.  However, with the massive stone burden that Plaintiff had due to the breach which caused his stents to be retained, it may not be technically possible to remove all of the stones in the kidneys themselves.  *Id*, at para. 12.

32)     As a result, there is now a massive stone burden that has formed on Plaintiff's stents.  *Id*. at para. 14.

33)     Not all of the renal calculus that formed on the stents could be removed, and this may lead to the formation of larger calculi with all of their attendant problems including infection. The many ureteral stents, stones that formed on them, and surgery and manipulations to remove the retained stents, could cause scarring of the ureters with renal obstruction.  *Id*.

34)     Further, more surgery is now needed to address the formed calculi, and all the problems that have arisen related to the formulation of the calculi. *Id*. In addition to the need for more surgeries, Plaintiff has developed ongoing and chronic kidney stone and kidney related health issues.

II.     **Defendant Corizon's Failure to Treat Plaintiff's**
        **Severe and Chronic Kidney Condition.**

35)     As of January 1, 2019, Plaintiff continued to suffer from the severe, chronic kidney issues that had resulted from the prior failure to timely remove Plaintiff's bilateral ureteral stents.

36)     Plaintiff's condition required considerable medical treatment to address the formed calculi and all of the attendant complications that arose from the formulation of such calculi. The treatment that Plaintiff needed included, but was not limited to, further surgeries to address the formed calculi, as well as additional treatment to address the effects of the calculi.

37)     During this time, Plaintiff was suffering, and continued to suffer, considerable pain and suffering as the result of his condition being left untreated, as well as additional complications arising from the grossly inadequate care that Plaintiff was receiving.

38)     On January 1, 2019, Defendant Corizon assumed responsibility for the medical care and treatment of all inmates housed by DPSCS from Wexford. Defendant Corizon's contract with the State of Maryland and DPSCS covered medical care, treatment, and utilization management services for all inmates in all DPSCS facilities, which included the facilities where Plaintiff was held.

39)     On January 1, 2019, when Defendant Corizon assumed responsibility for the medical care and treatment of all inmates in DPSCS's custody, Defendants Corizon assumed all responsibilities, duties, and obligations to provide medical care and treatment for medical conditions already in existence at the time Defendant Corizon assumed responsibility.

40)     This assumption of responsibility and duty for continuing medical care and treatment included the duty to continue treatment and/or provide treatment for chronic medical conditions and/or conditions left untreated, or inadequately treated, by Wexford's agents and/or employees.

10

41)      This assumption of responsibility and duty for continuing medical care and treatment included the obligation to provide adequate medical care to Plaintiff for the continuing medical condition that he was suffering, which included, but is not limited to, the obligation to treat Plaintiff for the ongoing and chronic kidney stone and kidney related health issues that DeBlois has, and continues to, suffer from.

42)      Adequate treatment of Plaintiff's condition would have included, but is not limited to, further surgeries to address the formed calculi, as well as additional treatment to address the effects of the calculi, including the significant pain and suffering that Plaintiff suffered.

43)      On and after January 1, 2019, Plaintiff did not receive any of the treatment that he desperately needed to address his severe, chronic kidney condition.

44)      Defendant Corizon, through its agents and/or employees, did not provide any of the surgeries that Plaintiff needed to address formed calculi.

45)      Defendant Corizon, through its agents and/or employees, did not provide adequate treatment to address any of the complications Plaintiff suffered because of the formed calculi.

46)      Defendant Corizon, and its agents and/or employees, knew, or should have known, about Plaintiff's condition, and the pressing need for continuing medical care and further surgeries to manage Plaintiff's condition. When Defendant Corizon assumed the responsibility and duty for continuing medical care and treatment for all inmates held in DPSCS facilities, Defendant Corizon retained the agents and/or employees previously employed by Wexford. Those agents and/or employees became Defendant Corizon's agents and/or employees as of January 1, 2019. *See* Exhibit B ("Olayinka Deposition").

47)      A contract operation monitor working with the State of Maryland, who was a nurse employed specifically to monitor medical, mental health, dental, and pharmacy contracts with the

11

State, testified under oath that Corizon retained Wexford's employees when Corizon assumed

responsibility for the medical care and treatment of inmates housed in DPSCS's facilities on

January 1, 2019. She further testified that Corizon's retention of Wexford's employees occurred

at every DPSCS facility across the entire system, including the facilities in which DeBlois was

housed:

> Q: Did the State at that time have a medical contractor, Wexford, Corizon that was at Jessup?
>
> A: Yes.
>
> Q: And who was the medical contractor?
>
> A: Wexford.
>
> Q: And is there another medical contractor at Jessup now?
>
> A: Yeah, there's another one in Jessup now, Corizon.
>
> Q: And when did Corizon take over?
>
> A: I'm thinking last year, January.
>
> Q: Okay. January of 2019?
>
> A: Yes.
>
> Q: And when Corizon took over, just for my edification, do they keep the same employees? Did they keep the same nurses and doctors at the institution?
>
> A: Yes, most of them.
>
> Q: Okay. All right. So the same individuals work for Wexford and then now work for Corizon; is that right?
>
> A: Correct.

Exhibit B ("Olayinka Deposition") at 7:15-8:17.

> Q: Okay. And when Corizon took over, did they just take over at JCI or did they take over throughout the whole system?

12

A: They took over the whole system.

Q: Throughout the whole system, did they do the same thing where generally they kept the same employees?

A: Yes.

Exhibit B ("Olayinka Deposition") at 23:15-22.

48)     These agents and/or employees knew, or should have known, about Plaintiff's medical condition and the need for continuing care. Plaintiff had made repeated requests for medical treatment to the individuals employed by Wexford prior to January 1, 2019, and continuously complained about the severe pain he suffered as a result of his condition. These individuals failed to provide adequate medical treatment to Plaintiff as agents and/or employees of Wexford prior to January 1, 2019 despite Plaintiff's repeated requests for treatment and complaints of pain and suffering, and continued to fail to provide adequate medical treatment to Plaintiff as agents and/or employees of Defendant Corizon on and after January 1, 2019, despite these individuals being aware of Plaintiff's severe condition and need for treatment.

49)     Further, the details of Plaintiff's condition, records of Plaintiff's requests for treatment and complaints of severe pain and suffering as a result of his condition, are notated throughout Plaintiff's medical records. These medical records were originally maintained by Wexford and transferred to Defendant Corizon's possession on or about January 1, 2019.

50)     Despite Defendant Corizon and its agents and employees' knowledge of Plaintiff's condition, and the need for further surgeries and medical care and treatment, Defendant Corizon, through its agents and/or employees, did not provide any of the surgeries that Plaintiff needed to address formed calculi or provide adequate treatment to address any of the complications Plaintiff suffered because of the formed calculi.

51)     On and after January 1, 2019, Plaintiff continued to try to request medical care, including, but not limited to, the surgeries that he needed to address the formed calculi and adequate treatment to address the complications resulting from the formed calculi.

52)     Each and every time Plaintiff requested treatment from Defendant Corizon and its agents and/or employees, Plaintiff was denied the treatment that he needed.

53)     Each and every time Plaintiff complained of the severe and ongoing pain and suffering that he suffered as a result of the formed calculi and other complications of his condition, Plaintiff was denied the treatment that he needed by Defendant Corizon and its agents and/or employees.

54)     Plaintiff was denied adequate medical care and treatment by numerous named and unnamed agents and/or employees of Defendant Corizon, when Plaintiff requested treatment and/or presented at a sick call or other medical appointment complaining of pain and suffering or otherwise presenting with severe symptoms associated with Plaintiff's condition. Defendant Corizon's agents and/or employees who failed to provide adequate medical care to Plaintiff, include, but are not limited to, Dawn M. Domalik, RN, Maksed Choudry, MD, and Asresahegn Getachew, RMD.

55)     Plaintiff attempted to request care on numerous occasions when he was seen by Defendant Corizon's agents and/or employees. For example:

        a)      Only a few days after Defendant Corizon's assumption of the responsibility and duty for Plaintiff's medical care and treatment, Plaintiff was seen by Dawn M. Domalik, RN, an agent and/or employee of Defendant Corizon. Plaintiff informed Nurse Domalik that his right side had been in serious pain for over a week. Nurse Domalik consulted with Maksed Choudry, MD, another agent and/or employee of Defendant

14

Corizon, and noted that Plaintiff was suffering from a possible kidney stone. Plaintiff was not provided adequate medical care to treat his condition, including, but not limited to, further surgeries for the formed calculi or treatment for the complications arising from the calculi.

b)       On February 25, 2019, Dr. Choudry saw Plaintiff again for a follow up internal medicine appointment. Dr. Choudry noted that Plaintiff had a history of ureteronephrolithiasis with hydronephrosis and urosepsis and placement of bilateral nephrostomy tubes. Despite his knowledge of Plaintiff's chronic medical condition, Plaintiff's request for medical treatment, and the pain and suffering reported by Plaintiff, however, Plaintiff was not provided adequate medical care to treat his condition, including, but not limited to, further surgeries for the formed calculi or treatment for the complications arising from the calculi.

c)       On June 17, 2019, Dr. Choudry saw Plaintiff again, and again noted Plaintiff's history of ureteronephrolithiasis with hydronephrosis and urosepsis and placement of bilateral nephrostomy tubes. Despite his knowledge of Plaintiff's chronic medical condition, Plaintiff's request for medical treatment, and the pain and suffering reported by Plaintiff, however, Plaintiff was not provided adequate medical care to treat his condition, including, but not limited to, further surgeries for the formed calculi or treatment for the complications arising from the calculi.

d)       On September 11, 2019, Plaintiff was seen by Asresahegn Getachew, RMD, an agent and/or employee of Defendant Corizon, for a telemedicine chronic care visit. Dr. Getachew noted Plaintiff's chronic medical conditions, noting that Plaintiff had a history of nephrolithiasis with hydronephrosis, urosepsis, and placement of bilateral nephrostomy

15

tube. Despite Dr. Getachew's knowledge of Plaintiff's chronic medical condition, Plaintiff's request for medical treatment, and the pain and suffering reported by Plaintiff, however, Plaintiff was not provided adequate medical care to treat his condition, including, but not limited to, further surgeries for the formed calculi or treatment for the complications arising from the calculi.

56)     Having assumed the responsibility and obligation to provide adequate medical care and treatment to all inmates in the custody of DPSCS housed in DPSCS's facilities, including Plaintiff, on January 1, 2019, Defendant Corizon assumed a duty of care to provide adequate medical care to Plaintiff on and after January 1, 2019.

57)     By failing to provide the medical care and treatment that Plaintiff needed to address his severe and chronic kidney condition, which would have required further surgeries to address the formed calculi and treatment for other complications that arose as a result of the formulation of the calculi, Defendant Corizon and its agents and/or employees breached the standard of care to provide adequate medical treatment to Plaintiff.

58)     As a direct and proximate cause of Defendant Corizon's breach of the standard of care and failure to provide adequate medical care and treatment to Plaintiff, Plaintiff's condition has continued to deteriorate, and Plaintiff has suffered, and continues to suffer, significant pain and suffering as a result of the formed calculi and the complications that have arisen as a result of the formed calculi.

59)     At all times relevant to the occurrences complained of herein, Defendant Corizon, through its agents and employees, real or ostensible, acted negligently in its treatment of Plaintiff.

60)     As a result of the actions of Defendant Corizon, through its agents, servants, and employees, acting within the scope of their employment, Plaintiff has suffered, and continues to

suffer, extreme emotional anguish, including anxiety, loss of sleep, and overall deterioration of his health, physical pain and suffering in the form of overall body pain, particularly in and about his abdomen. Plaintiff also suffers from other conditions caused by Defendant Corizon's negligence.

61)    At no time did Plaintiff contribute or give cause for his denial of medical care and resulting injuries.

62)    Defendant Corizon's conduct, through its agents, servants, and employees, is continuous and ongoing.

63)    All conditions precedent to the filing of this lawsuit have been met.

## COUNT I
### (Negligence, Medical Malpractice)

64)    Every paragraph not falling under this Count is incorporated herein by reference.

65)    On January 1, 2019, when Defendant Corizon assumed the responsibility and obligation to provide medical care and treatment to all inmates within the custody of DPSCS housed within DPSCS's facilities from Wexford, Defendant Corizon assumed a duty to provide adequate medical care and treatment to all inmates in DPSCS's custody.

66)    At all times relevant herein, Plaintiff was in the custody of DPSCS and housed within DPSCS's facility. Thus, on and after January 1, 2019, Defendant Corizon had a duty to Plaintiff to adequately provide Plaintiff medical care and treatment.

67)    Defendant Corizon has a continuing and ongoing duty to provide adequate medical care and treatment to Plaintiff in accordance with the standards of accepted medical practice that is required for physicians, nurses, physicians' assistants, and other health care providers in the medical community with similar training, skill, and education.

68)    On January 1, 2019, when Defendant Corizon assumed the duty to provide adequate medical care and treatment to Plaintiff in accordance with the standards of accepted medical

practice, Plaintiff was suffering from, and continued to suffer from, severe, chronic kidney issues, including, but not limited to, calculi forming on ureteral stents and the complications resulting from the formation of such calculi.

69)     On January 1, 2019, when Defendant Corizon assumed the duty to provide adequate medical care and treatment to Plaintiff in accordance with the standards of accepted medical practice, Plaintiff needed medical care and treatment to address the severe, chronic kidney issues that he suffered from, including, but not limited to, surgeries to address the formed calculi and additional treatment to address the other complications arising from the formulation of the calculi.

70)     On January 1, 2019, when Defendant Corizon assumed the duty to provide adequate medical care and treatment to Plaintiff in accordance with the standards of accepted medical practice, Defendant Corizon knew, or should have known, of Plaintiff's condition and the medical care and treatment that Plaintiff needed, as Plaintiff's condition, records of Plaintiff's prior requests for treatment, and Plaintiff's prior complaints of severe pain and suffering resulting from his condition are notated throughout Plaintiff's medical records, which were originally maintained by Wexford but transferred to Defendant Corizon's possession on or about January 1, 2019.

71)     On January 1, 2019, when Defendant Corizon assumed the duty to provide adequate medical care and treatment to Plaintiff in accordance with the standards of accepted medical practice, Defendant Corizon and its agents and/or employees knew, or should have known, of Plaintiff's condition and the medical care and treatment that Plaintiff needed, as the same individuals who provided inadequate care to Plaintiff as Wexford's agents and/or employees prior to January 1, 2019 were retained by Defendant Corizon as Defendant Corizon's agents and/or employees on and after January 1, 2019.

18

72)     After January 1, 2019, when Defendant Corizon assumed the duty to provide adequate medical care and treatment to Plaintiff in accordance with the standards of accepted medical practice, Defendant Corizon and its agents and/or employees knew, or should have known, of Plaintiff's condition and the medical care and treatment that Plaintiff needed, because Plaintiff continued to try and request medical care at every opportunity. However, each and every time that Plaintiff requested treatment from Defendant Corizon and its agents and/or employees, and each and every time Plaintiff complained of the severe and ongoing pain and suffering that Plaintiff suffered as a result of the formed calculi and other complications related to his condition to Defendant Corizon and its agents and/or employees, Plaintiff was denied the treatment that he needed.

73)     Despite Defendant Corizon and its agents and/or employees' knowledge of Plaintiff's chronic medical condition, Plaintiff's request for medical treatment, and the pain and suffering reported by Plaintiff, however, Plaintiff was not provided adequate medical care to treat his condition, including, but not limited to, further surgeries for the formed calculi or treatment for the complications arising from the calculi.

74)     On and after January 1, 2019, Defendant Corizon, through the named agents, servants, and employees, as well as other unnamed agents, servants, and employees acting within the scope of their employment, breached its duty and were continuously and routinely negligent for, *inter alia*:

    a)     Failing to properly assess the Plaintiff;

    b)     Failing to follow ordered follow up care and treatment for the removal of Plaintiff's stents;

    c)     Failing to follow the prescription for stent removal and follow up surgery;

d)      Failing to properly treat the claimant's kidney stone and other internal medical conditions;

e)      Failing to provide proper follow-up care to Plaintiff;

f)      Failing to respond to claimant's repeated requests to help with his unrelenting pain; and

g)      Otherwise careless and/or negligent actions.

75)     Defendant Corizon, through its respective employees and real and/or ostensible agents, failed to perform or administer treatments to the Plaintiff as a reasonable, ordinary health care provider would in administering the medical services to the claimant, thus breaching its duty of care.

76)     Defendant Corizon and its agents and/or employees breached their duty to provide adequate medical care to Plaintiff by failing to provide the medical care and treatment that Plaintiff needed to address his severe and chronic kidney condition, which would have required further surgeries to address the formed calculi and treatment for other complications that arose as a result of the formulation of the calculi.

77)     As a direct and proximate cause of Defendant Corizon's breach of the standard of care and failure to provide adequate medical care and treatment to Plaintiff, Plaintiff's condition has continued to deteriorate, and Plaintiff has suffered, and continues to suffer, significant pain and suffering as a result of the formed calculi and the complications that have arisen as a result of the formed calculi.

78)     As a direct and proximate result of the conduct, misconduct, actions, and inactions of Defendant Corizon, through its agents or employees acting within the scope of their employment, Plaintiff has suffered and continues to suffer injury as well as permanent damage

internally, regular and severe pain in his abdominal area, limitation on his activities, physical pain, mental anguish, embarrassment, shame, humiliation, loss of enjoyment of life, as well as an inability to perform certain daily activities, all to the detriment of the claimant.

WHEREFORE, Plaintiff demands damages against Defendant Corizon in an amount to be determined at trial, but in excess of $75,000, in addition to costs and attorneys' fees.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims so triable.

Respectfully submitted,

HANSEL LAW, PC

_____/s/_____
Cary J. Hansel (Bar No. 14722)
cary@hansellaw.com
2514 N. Charles Street
Baltimore, MD 21218
T: (301) 461-1040
F: (443) 451-8606
*Counsel for Plaintiff*

and,

Law Office of Samuel M. Shapiro, PA

_____/s/_____
Samuel M. Shapiro (Bar No. 688)
rogah@aol.com
200-A Monroe Street, Suite 233
Rockville, MD 20850
T: (301) 340-1333
F: (301) 340-1149
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of December, 2020, I caused the foregoing to be filed

with the Court's electronic filing system which shall effect service on all parties so entitled.


_____/s/_____
Cary J. Hansel