IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD DEBLOIS,
*Plaintiff*,

  v.

CORIZON HEALTH, INC.,
*Defendant*.

Civil Action No. ELH-20-1816

**MEMORANDUM OPINION**

This case concerns alleged inadequate medical care provided to plaintiff Richard DeBlois, a Maryland prisoner, while incarcerated at institutions controlled by the Maryland Department of Public Safety and Correctional Services ("DPSCS").

Mr. DeBlois, through counsel, filed an initial Complaint against Wexford Health Sources Incorporated ("Wexford") and Corizon Health, Inc. ("Corizon"), asserting a single negligence claim against both defendants. ECF 1 (the "Complaint").[1] According to plaintiff, Wexford provided health care to plaintiff from 2014 through 2018, during which time it failed to ensure that plaintiff underwent surgery to remove ureteral stents. *See id.* ¶¶ 6, 19-24. Then, Corizon "took over the provision of health care" in 2019. *Id.* ¶ 38.

Corizon moved to dismiss the suit, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 6. By Memorandum (ECF 28) and Order (ECF 29) of November 20, 2020, I granted Corizon's motion, because the Complaint failed to allege facts concerning acts or omissions by Corizon that would render Corizon liable for negligence. However, the dismissal was without prejudice and with leave to amend.

---

[1] Jurisdiction is founded on diversity of citizenship, under 28 U.S.C. § 1332. ECF 1, ¶ 8.

Mr. DeBlois subsequently filed an Amended Complaint (ECF 32), supported by exhibits.[2] As with the original Complaint, the Amended Complaint asserts one claim for "Negligence, Medical Malpractice." *Id.* at 17.  But, the claim is lodged only against Corizon; Wexford is not named as a defendant in the Amended Complaint.  One week after filing the Amended Complaint, plaintiff filed a stipulation of dismissal, with prejudice, as to "all claims" against Wexford.  ECF 33.

Corizon has moved to dismiss the Amended Complaint, pursuant to Rule 12(b)(6) (ECF 36), supported by a memorandum of law.  ECF 36-1 (collectively, the "Motion").  This time, defendant does not take issue with the sufficiency of plaintiff's factual allegations.  Rather, defendant attacks the sufficiency of the expert certificate appended to the Amended Complaint, which plaintiff also filed with a Maryland administrative entity before filing suit, as required by the Maryland Health Care Malpractice Claims Act ("HCMCA"), codified in Md. Code (2020 Repl. Vol.), § 3-2A-01 *et seq.* of the Courts and Judicial Proceedings Article ("C.J.").

Plaintiff opposes the Motion.  ECF 41.  No reply has been filed, and the time to do so has expired.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Motion.

## I. Factual Background[3]

Mr. DeBlois has been a Maryland detainee or prisoner since 2014. *See* ECF 32, ¶¶ 9, 15.

---

[2] Mr. DeBlois again invokes diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  *See* ECF 32, ¶ 6.  It appears the criteria have been met.  The amount in controversy exceeds $75,000.  ECF 32, ¶ 6.  Mr. DeBlois resided in Maryland at the relevant times.  *Id.* ¶ 9.  Corizon is a Delaware corporation and has a principal place of business in Tennessee.  ECF 27; *see* ECF 32, ¶ 10.

[3] Given the posture of the case, I must assume the truth of the facts alleged in the suit, as discussed *infra*.  *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).  Further, the Court may consider documents attached to the Complaint or Motion, "so long as they are integral to the

On November 12, 2014, while incarcerated at an unspecified institution, plaintiff "underwent a left percutaneous nephrostolithotomy and exchange of his existing right ureteral stent at the University of Maryland." *Id.* ¶ 15.[4]  The procedure was necessary to address plaintiff's "bilateral large renal calculi," *i.e.*, kidney stones. *Id.* ¶ 16.[5]  He was discharged on November 13, 2014, and "scheduled to return for surgery." *Id.* ¶ 16. Accordingly, Dr. Liberatus DeRosa, "then an employee of Wexford, noted in Deblois' [sic] medical record that Deblois [sic] was to return to the University of Maryland in 3 days for further surgery." *Id.* ¶ 17.

Plaintiff underwent the scheduled surgery "at the University of Maryland" on December 4, 2014. *Id.* ¶ 18. In surgery on two consecutive days, plaintiff "had a right percutaneous nephrostolithotomy and replacement of his right ureteral stent" and "a left percutaneous nephrostolithotomy and replacement of his left ureteral stent." *Id.*

Plaintiff was discharged on December 8, 2014. *Id.* ¶ 19.  His "discharge summary indicated that he was to return to the urology clinic on or about January 8, 2015 for cystoscopy and removal of bilateral ureteral stents." *Id.*  On January 7, 2015, plaintiff "had an x-ray that reported bilateral ureteral stents." *Id.* ¶ 20.  However, the procedure to remove the stents, which was scheduled for the following day, did not occur. *Id.*

---

complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] Although the Amended Complaint does not define "nephrostolithotomy," it is defined in the Motion as a "procedure to remove kidney stones." ECF 36-1 at 2, n.1.

According to the website of the National Library of Medicine, "nephrostolithotomy" and "nephrolithotomy" are interchangeable terms. *Percutaneous kidney procedures*, NIH, NATIONAL LIBRARY OF MEDICINE, MEDLINEPLUS, https://medlineplus.gov/ency/article/007375.htm; *see* Fed. R. Evid. 201 (permitting a court to take judicial notice of adjudicative facts that are "not subject to reasonable dispute").

[5] The Amended Complaint uses "renal calculi" and "kidney stones" interchangeably.

The stents were not removed until August 2017. *Id.* ¶ 31. According to the Amended Complaint, failure to remove the stents resulted in "voiding symptoms, flank pain, hematuria, and UTI." *Id.* ¶ 21. In addition, "calcific debris was deposited on Plaintiff's stents, and, over time, became many large calculi within his kidneys and bladder." *Id.* ¶ 24. Plaintiff asserts his "medical issues and severe pain could have been addressed through a minor out-patient procedure that would have left Plaintiff free of kidney stones." *Id.*

Mr. DeBlois alleges that he was "not . . . made aware that he had bilateral stents, or that the bilateral stents were the source of [his] ongoing pain and other medical issues." *Id.* ¶ 22. However, he alleges the existence of medical records from 2015 and 2016 that document exchanges between plaintiff and Wexford personnel about the stents. *See id.* ¶¶ 21(a)-(g). For example, on June 6, 2015, a note from Dr. Monica Stallworth stated: "[H]ematuria only occurs when he does abdominal crunches and he . . . states that he can feel his stents when he does this activity." *Id.* ¶ 21(a).

According to Mr. DeBlois, on January 19, 2017, he was "finally made aware that his severe medical issues were being caused by renal stents, [and he] underwent a laser lithotripsy of bladder calculi." *Id.* ¶ 26. Following this surgery, Mr. DeBlois "went into septic shock necessitating the placement of bilateral percutaneous nephrostomy tubes to drain the kidneys." *Id.* ¶ 27. He also had a "second ureteral stent . . . placed on the left . . . ." *Id.* ¶ 27. Then, on February 22, 2017, "Plaintiff had his nephrostomy tubes exchanged for new tubes with attached stents that were in addition to the retained stents that could not be removed due to stones on, and within, them." *Id.*

In April and June 2017, plaintiff underwent two additional procedures to remove kidney stones. *Id.* ¶¶ 28, 29. By August 2017, Mr. DeBlois "was finally free of [all] drainage tubes . . . ." *Id.* ¶ 31. But, the presence of the stents implanted in December 2014 caused a "massive

[kidney] stone burden" that remains a problem.  *Id.* ¶ 31.

Of import here, on January 1, 2019, Corizon "assumed responsibility for the medical care and treatment of all inmates housed by DPSCS," replacing Wexford.  *Id.* ¶ 38.  And, Corizon "retained the agents and/or employees previously employed by Wexford," who became Corizon's "agents and/or employees."  *Id.* ¶ 46.  Plaintiff "continued to suffer from the severe, chronic kidney issues" that resulted from the failure to "remove [his] . . . stents."  *Id.* ¶ 35.  And, he claims that he continued to receive deficient care after Corizon took over the reins.  *See id.* ¶¶ 51-55.

The Amended Complaint names four dates or approximate dates between January and September 2019, in which plaintiff had appointments with individual doctors or nurses employed by Corizon who failed adequately to treat or respond to plaintiff's condition.  *See id.* ¶¶ 55(a)-(d). Most, if not all, of the care providers who saw plaintiff on those occasions were aware of his medical history and his "chronic" condition.  *Id.* ¶ 55(b); *see id.* ¶¶ 55(a), (c), (d).  And, plaintiff reported significant pain at each appointment.  *See id.* ¶¶ 55(a)-(d).  According to plaintiff, he did not receive "adequate medical care . . . including, but not limited to, further surgeries for the formed calculi or treatment for the complications arising from the calculi."  *Id.* ¶ 55(a); *see id.* ¶¶ 55(b)-(d).  In addition, Mr. DeBlois alleges that he was "denied adequate medical care and treatment by numerous named and unnamed agents and/or employees of Defendant Corizon . . . ."  *Id.* ¶ 54.

## II.  Legal Standards

### A.  Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Services Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v.*

*Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10

(2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and...recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co*., 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); see *Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), cert. denied, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty*., 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A*

*Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In deciding a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.' " *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co*., 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

8

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

The exhibits appended to the Amended Complaint include the "Certificate of Qualified Expert" of Jay Copeland, M.D., dated April 6, 2020 (ECF 32-4),[6] and the "Order of Transfer" from the Health Care Alternative Dispute Resolution Office ("HCADRO"). ECF 32-1. The Amended Complaint explicitly incorporates both exhibits. ECF 32, ¶¶ 7, 15. Therefore, I may consider them in resolving the Motion.  *See Goines*, 822 F.3d 159.  In addition, plaintiff's opposition to the

---

[6] The exhibit containing Dr. Copeland's Certificate of Qualified Expert appears to be missing the fourth page of the document.

Motion includes what appears to be a report by Dr. Copeland dated April 6, 2020, which includes his curriculum vitae and accompanies the Certificate of Qualified Expert.  ECF 41-3 at 1-8; *see* ECF 32-4 at 7 (signature line of the Certificate of Qualified Expert references "attached report").  I shall refer collectively to the Certificate of Qualified Expert and the report as the "Copeland Certificate" or "Certificate," unless specifically referencing the report.

Plaintiff's opposition is also supported by the "Supplemental Certificate of Qualified Expert" produced by Dr. Copeland, and dated February 20, 2021.  ECF 41-2 (the "Supplemental Certificate").  The Supplemental Certificate "adopts, incorporates, and supplements" the Copeland Certificate.  *Id.* at 1, ¶ 2.  Moreover, defendant has not filed a reply, and thus does not oppose plaintiff's use of the Supplemental Certificate.   Therefore, I may consider the Supplemental Certificate.

### B.  Choice of Law

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice-of-law rules, unless a compelling federal interest directs otherwise.  *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011).  Maryland is, of course, the forum state.

Mr. DeBlois's medical malpractice claim sounds in tort.  Under Maryland's choice-of-law principles for tort claims, Maryland applies the doctrine of *lex loci delecti*, *i.e.*, the law of the jurisdiction where the alleged wrong occurred.  *Lewis v. Waletzky*, 422 Md. 647, 657, 31 A.3d 123, 129 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648 (2007); *Kortobi v. Kass*, 182 Md. App. 424, 443, 957 A.2d 1128, 1139 (2008), *aff'd*, 410 Md. 168, 978 A.2d 247 (2009).  Here, the alleged wrong occurred in Maryland.  Therefore, I shall apply Maryland law, which is consistent with the parties' submissions.

## IV. Discussion

## A.

As mentioned, Corizon challenges the sufficiency of the Copeland Certificate rather than the factual allegations in the Amended Complaint.  In Corizon's view, dismissal of the suit is warranted because of two separate deficiencies of the Copeland Certificate.  First, defendant asserts that the Certificate only addresses Wexford's alleged negligence, and does not include any details concerning Corizon's alleged misconduct.  Second, defendant argues that Dr. Copeland is not qualified to opine as to the facts of this case.  *See* ECF 36-1 at 5-10.

On July 21, 2021, after the filing of the Motion and plaintiff's opposition, the Fourth Circuit decided *Pledger v. Lynch*, _____ F.4th _____, 2021 WL 3072861 (4th Cir. July 21, 2021), which is highly pertinent.  There, the Court confronted the question of whether a claim for medical negligence asserted in federal court, and governed by "West Virginia liability standards," is also subject to the requirement of West Virginia law that plaintiff serve defendant with an expert certificate prior to filing suit.  *Id.* at *3; *see id.* at *4-5.  A majority of the panel concluded that "state-law certification requirements like West Virginia's are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court."  *Id.* at *1.  In short, the plaintiff's failure to obtain an expert certificate was of no moment because he had filed suit in federal court.

Despite the differences in some of the trappings of this case and *Pledger*, the Fourth Circuit's holding seems to dictate the outcome here.  But, given the timing, the parties have not had an opportunity to address *Pledger*'s applicability.  Accordingly, I first describe the relevant Maryland law as discussed in the parties' submissions.  Then, I turn to the *Pledger* decision, and consider its consequences here.

**B.**

Maryland's Health Care Malpractice Claims Act, C.J. § 3-2A-01 *et seq.*, establishes administrative prerequisites to filing a medical malpractice suit.  In particular, a claimant must first file a claim with the HCADRO.  C.J. § 3–2A–04(a)(1)(i); *see Dunham v. Univ. of Maryland Med. Ctr.*, 237 Md. App. 628, 645–46, 187 A.3d 752, 762 (2018) ("To initiate a claim under the Act, 'a person with a medical malpractice claim [must] first file that claim with the Director of the [HCADRO].'") (cleaned up; alterations in *Dunham*); *Retina Grp. of Washington, P.C. v. Crosetto*, 237 Md. App. 150, 165, 183 A.3d 873, 882 (2018); *see also Alvarez v. Md. Dept. Of Corr.*, PX-17-141, 2018 WL 1211533, at *8 (D. Md. Mar. 8, 2018)).  Within 90 days of filing a claim with the HCADRO, the claimant must submit a certificate of a qualified expert, along with a report of the attesting expert, attesting to the defendant's departure from the standard of care and addressing the issue of proximate cause.  C.J. § 3–2A–04(b)(1), (3); *see Wilcox v. Orellano*, 443 Md. 177, 184, 115 A.3d 621, 625 (2015).  The "purpose of the report is to supplement the conclusions in the certificate by providing additional details" and explanation.  *Wilcox*, 443 Md. at 185, 115 A.3d at 625 n.7; *see Walzer v. Osborne*, 395 Md. 563, 578–79, 911 A.2d 427, 435-36 (2006).

The expert certificate requirement reduces the number of "frivolous claims by requiring the parties to substantiate the merit of their claims and defenses early in the process."  *Wilcox*, 443 Md. at 185, 115 A.3d at 625; *see Carroll v. Konits*, 400 Md. 167, 200, 929 A.2d 19, 39 (2007) (stating that the requirement is "intended to curtail frivolous malpractice claims"); *D'Angelo v. St. Agnes Healthcare, Inc.*, 15 Md. App. 631, 645, 853 A.2d 813, 822 (2004); *Crosetto*, 237 Md. App. at 166, 183 A.3d 873.  To pass muster, an expert certificate must (1) "'include information necessary for evaluating whether the defendant breached the standard of care,'" and (2) "'mention explicitly the name of the licensed professional who allegedly breached the standard of care.'"

*Dunham*, 237 Md. App. at 646–47, 187 A.3d at 762–63 (citations omitted); *see Carroll*, 400 Md. at 196, 929 A.2d at 36.   When a certificate does not "identify, with some specificity," the individual(s) who committed the alleged breach, resolution of the malpractice claim is "'impossible.'"   *Dunham*, 237 Md. App. at 647, 187 A.3d at 763 (quoting *Carroll*, 400 Md. at 196, 929 A.2d at 37).

Therefore, "'failure to file a proper certificate is tantamount to not having filed a certificate at all.'"   *Puppolo v. Adventist Healthcare, Inc.*, 215 Md. App. 517, 532, 81 A.3d 620, 628 (2013) (quoting *D'Angelo*, 15 Md. App. at 645, 853 A.2d at 822).   In either scenario, the suit is subject to dismissal, without prejudice. C.J. § 3–2A–04(b)(1)(i); *see Wilcox*, 443 Md. at 185, 115 A.3d at 625-26; *Walzer*, 395 Md. at 578–79, 911 A.2d at 435.

As the Maryland Court of Appeals summarized in *Breslin v. Powell*, 421 Md. 266, 290 n. 20, 26 A.3d 878, 893 n. 20 (2011):

> [T]he Certificate is an "indispensable" step in the arbitration process such that arbitration cannot occur without the filing of a proper certificate. Because a claim cannot be in circuit court without meeting all of the requirements for arbitration laid out in CJP § 3–2A–04, including filing a Certificate, filing of a proper certificate is a condition precedent to filing an action in circuit court. . . . Therefore, if a proper Certificate has not been filed, the case should not have been in court in the first place and should be dismissed without prejudice in accordance with the HCMCA.

Once a claimant has filed a proper expert certificate and report, he or she may either proceed with arbitration or waive arbitration and file suit.   *See* C.J. § 3–2A–06B.   A party who waives arbitration "shall file a complaint and a copy of the election to waive arbitration in the appropriate [Maryland] circuit court or the United States District Court." C.J. § 3-2A-06B(f)(1).

A plaintiff's failure to comply with the HCMCA's certificate requirements may warrant dismissal for failure to state a claim under Rule 12(b)(6), rather than dismissal for lack of subject matter jurisdiction.   "Although the certificate requirement is a condition precedent to filing a

medical malpractice case in [] court . . .  failure to satisfy that condition does not . . . divest the court of subject matter jurisdiction." *Crosetto*, 237 Md. App. at 166 n.9, 183 A.3d at 883; *accord Breslin*, 421 Md. at 290 n. 20, 26 A.3d at 893 n.20; *Kearney*, 416. Md. at 660 n.13, 7 A.3d at 612; *Zeller v. Yiya Zhou*, CV PWG-18-2650, 2019 WL 2579412 (D. Md. June 24, 2019).

With this context in place, I turn to the Fourth Circuit's recent decision in *Pledger*, 2021 WL 3072861.

## C.

In *Pledger*, the plaintiff, Pledger, a federal prisoner, brought suit against prison officials and care providers under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), 2671 *et seq.*, alleging medical negligence.  *Id.* at *1.  The FTCA "incorporates" state law "liability standards."  *Id.* at *3; *see* 28 U.S.C. § 1346(b)(1).  Thus, Pledger's suit was "premised" on an alleged "violation of West Virginia medical negligence law."  *Pledger*, 2021 WL 3072861, at *4.

West Virginia has a statute pertinent to medical malpractice claims, similar to the HCMCA in Maryland.  Under West Virginia's statute, "would-be medical malpractice plaintiffs must serve on each putative defendant, at least thirty days prior to filing suit, . . . a 'screening certificate of merit' from a from a health care provider who qualifies as an expert under state law."  *Id.* (citation omitted).  Like in Maryland, the expert certificate must attest that the defendant breached the standard of care "in a way that 'resulted in injury or death.'"  *Id.* (citation omitted).

Such requirements are hardly exceptional.  As the Fourth Circuit observed, about "half of all states similarly demand that medical malpractice plaintiffs secure some sort of early support from a qualifying expert."  *Id.* at *5.

Pledger did not comply with the West Virginia law's pre-suit certificate requirement.  For that reason, the district court dismissed his suit.  *Id.* at *3.  On appeal, Pledger argued that the

certificate requirement did not apply in federal court, and that it conflicted with the pertinent Federal Rules of Civil Procedure (the "Federal Rules").  *See id.* at *5.

The *Pledger* majority applied the "well-established, two-step framework for mediating any potential conflict" between West Virginia law and the Federal Rules, as established by the Supreme Court in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) and *Hanna v. Plumer*, 380 U.S. 460 (1965).  The Court explained, *id.* (brackets in *Pledger*)[7]:

> We first ask whether the Federal Rules "answer[ ] the question in dispute," *Shady Grove*, 559 U.S. at 398 – here, whether a medical malpractice plaintiff must provide pre-suit expert support for his claim.  If the Federal Rules do answer that question, then they govern, notwithstanding West Virginia's law – unless, at step two of the analysis, we find the relevant Federal Rules invalid under the Constitution or the Rules Enabling Act.  *Id.* at 398 . . . .  But if there is a valid Federal Rule that answers the "same question" as the MPLA, then our work is done, and we apply the Federal Rules without wading into the "murky waters" of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its distinct choice-of-law rules. *Shady Grove*, 559 U.S. at 398–99.

At the outset of its discussion of the first step of the *Shady Grove* framework, the majority explained that "the Federal Rules may 'answer' a question without speaking to it expressly . . . ." *Pledger*, 2021 WL 3072861, at *5.  If the Federal Rules either "'cause a direct collision'" with the West Virginia law or "'implicitly . . . control the issue,' then the Federal Rules govern notwithstanding state law."  *Id.* (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987)).

The Court then determined that various Federal Rules are sufficiently broad to answer whether a medical malpractice plaintiff in federal court must present an expert certificate "to state a claim for medical negligence[.]"  *Pledger*, 2021 WL 3072861, at *5; *see id.* at *6.  In short, the Court reasoned that Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12, which set forth general pleading requirements, do not require the presentation of expert evidence at the pleading stage.  *See id.* at *6.  Nor does Fed. R. Civ. P. 11, which "expressly provides that 'a pleading need *not* be verified

---

[7] "MPLA" in the quote set forth above refers to the West Virginia law at issue in *Pledger*.

15

or accompanied by an affidavit,' and instead treats the signature of an attorney or party as a certification that the claim is legally sufficient and likely factually supported." *Id.* (emphasis in original) (quoting Fed. R. Civ. P. 11(a), (b)).

Accordingly, the majority concluded that the West Virginia pre-filing certificate requirement is inconsistent and "'impossible to reconcile'" with these provisions of the Federal Rules. *Pledger*, 2021 WL 3072861, at *6 (quoting *Shields v. United States*, 436 F. Supp. 3d 540, 548 (D. Conn. 2020)). And, the second step of the *Shady Grove* framework did not raise any concerns, as the Federal Rules enjoy presumptive validity. *See Pledger*, 2021 WL 3072861, at *7 (collecting cases). Moreover, the Court rejected the defendants' argument that "the choice-of-law framework set out in *Erie*" should take the place of the "functional" inquiry prescribed by the first step of the *Shady Grove* framework. *Id.* at *7; *see id.* at *8.

Therefore, the Court held that West Virginia's expert certificate requirement "cannot apply" in federal court. *Id.* at *6; *see id.* at *9. In doing so, the Fourth Circuit joined the Sixth Circuit and the Seventh Circuit in deciding that, for medical malpractice actions brought in federal court, the Federal Rules supplant State law expert certificate requirements. *Id.* at *5; *see Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019); *Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019). However, as the dissent noted, two other circuits have adopted a conflicting approach. *Pledger*, 2021 WL 3072861, at *13 n.5 (Quattlebaum, J., concurring in part and dissenting in part); *see Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262–64 (3d. Cir. 2011); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1540 (10th Cir. 1996).

Plainly, *Pledger* is significant for present purposes. The majority articulated the question of law at the heart of its analysis: "'Does someone need a certificate of merit to state a claim for medical negligence' in federal court?" *Pledger*, 2021 WL 3072861, at *5 (cleaned up) (quoting

*Gallivan*, 943 F.3d at 293).  Little in the analysis turned on the nuances of the West Virginia law; what mattered was simply that the law requires plaintiffs to have expert evidence to state a medical malpractice claim.  So too does the HCMCA.  *See* C.J. § 3–2A–04(b)(1), (3).  At a minimum, then, *Pledger* appears to instruct that Mr. Deblois's suit cannot be dismissed for failure to comply with the pre-filing certificate requirements in the HCMCA (or the case law construing those requirements).

To be sure, *Pledger* does not opine on the fate of certificate requirements in states other than West Virginia.  In fact, the defense "suggest[ed]" that the West Virginia requirement must control in federal court because in *Davison v. Sinai Hosp. of Baltimore, Inc.*, 617 F.2d 361, 362 (4th Cir. 1980) (per curiam), the Fourth Circuit recognized the applicability of Maryland's "pre-dispute arbitration requirement."  *Pledger*, 2021 WL 3072861, at *9; *see also Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (citing *Davison*).  Formally, the majority concluded that it did not need to reach the question "whether, evaluated under *Hanna* and *Shady Grove*, the [HCMCA] would apply in federal court."  *Pledger*, 2021 WL 3072861, at *9.  Nonetheless, the Court revealed something of its view.  As the majority explained, *Davison* "simply adopt[ed]" a district court ruling "without discussion."  *Pledger*, 2021 WL 3072861, at *9.  And, the district court's reasoning was "unconvincing," as it failed to consider *Hanna*, 380 U.S. 460, and predated *Shady Grove*, 559 U.S. 393.  *Id.* at *9.

Given that the parties have not had the opportunity to brief the issues presented by *Pledger*, the denial of Corizon's Motion shall be without prejudice to Corizon's right to raise related arguments at a later stage of this litigation.

### D.

In any event, and in the alternative, I conclude that dismissal is not warranted on the basis of Maryland law.

Corizon assumed responsibility for prison health care as of January 1, 2019.  Corizon points out that the Copeland Certificate does not include any facts regarding an alleged breach of the duty of care after January 1, 2019, when it assumed responsibility for plaintiff's health care. ECF 36-1 at 6-7.  According to defendant, the last date cited in the Copeland Certificate is September 21, 2017. *Id.* at 6.

Although Dr. Copeland asserted in the Certificate that both Wexford and Corizon breached the standard of care (ECF 32-4 at 5), he did not provide any information "'necessary for evaluating'" whether Corizon did so.  *Dunham*, 237 Md. App. at 646–47, 187 A.3d at 762–63 (quoting *Kearney v. Berger*, 416 Md. 628, 651, 7 A.3d 593, 606 (2010)).  The same is true of Dr. Copeland's report, which was submitted as an appendix to plaintiff's opposition.

Moreover, as Corizon argues, the Certificate does not identify the individual care providers responsible for Corizon's alleged negligence.  *Dunham*, 237 Md. App. at 646-47, 187 A.3d at 762-63 is instructive.  There, the plaintiffs' expert certificate asserted that the "agents, servants, and/or employees" of various hospitals provided deficient care.  *Id.* at 636, 187 A.3d at 756.  The Maryland Court of Special Appeals dismissed the suit against the hospitals because the expert certificate did not "specifically identify any individuals who breached the standard of care." *Dunham*, 237 Md. App. at 647, 187 A.3d at 763. The Copeland Certificate, as well as the accompanying report, is deficient for the same reason.

Whatever merit Corizon's arguments may have, defendant has not addressed plaintiff's submission of the Supplemental Certificate.  ECF 41-2.  As mentioned, plaintiff submitted the

Supplemental Certificate, also produced by Dr. Copeland, as an exhibit to his opposition.  The Supplemental Certificate "adopts, incorporates, and supplements" the original Copeland Certificate.  *Id.* at 1, ¶ 2.  Moreover, it includes specific facts concerning the provision of health care to plaintiff after January 1, 2019, as well as the alleged negligence of individual care providers who cared for plaintiff during that period.  *See id.* at 2, ¶¶ 5(a)-(c).

As indicated, Corizon has not filed a reply or offered any opposition to plaintiff's reliance on the Supplemental Certificate.  Therefore, I shall consider the Supplemental Certificate.  And, at this stage, the Supplemental Certificate cures the deficiencies of the original Copeland Certificate.

One final issue remains.  Corizon also contends, in essence, that Dr. Copeland is not qualified to offer expert evidence in this case because he lacks the requisite credentials to opine on "the standard of care in correctional medicine."  ECF 36-1 at 9.  Mr. DeBlois counters that Dr. Copeland is eminently qualified to address the treatment for plaintiff's urological conditions, and that there is no legal basis for defendant's view that the standard of care in prison differs from the standard applicable to the general population.  *See* ECF 41 at 26-27.

C.J. § 3-2A-02(c)(2)(ii)(1) provides:

In addition to any other qualifications, a health care provider who attests in a certificate of a qualified expert or testifies in relation to a proceeding before a panel or court concerning a defendant's compliance with or departure from standards of care:

A. Shall have had clinical experience, provided consultation relating to clinical practice, or taught medicine in the defendant's specialty or a related field of health care, or in the field of health care in which the defendant provided care or treatment to the plaintiff, within 5 years of the date of the alleged act or omission giving rise to the cause of action; and

> B. Except as provided in subsubparagraph 2 of this subparagraph, if
> the defendant is board certified in a specialty, shall be board certified
> in the same or a related specialty as the defendant.

This section requires that a qualified expert who is "board certified in a specialty . . . be board certified in the same or related specialty as the defendant." *Id.*  In determining what qualifies as a "related subfield," Maryland courts look to whether there is sufficient "overlap" between the "areas of concern" of the two health care practitioners being compared.  *Chaplin v. University of Maryland Medical System Corp.*, 2019 WL 5488457, at *2 (Ct. Sp. App. Oct. 25, 2019). In *DeMurth v. Strong*, 205 Md. App. 521, 544, 45 A.3d 898 (2012), the Court concluded that specialties can be related if the treatment they provide or a procedure they undertake overlap.  *See Jones v. Bagalkotakar*, 750 F. Supp. 2d 574, 581 (D. Md. 2010) (focusing on the procedure at issue and concluding that a pediatrician's field was sufficiently related to that of a internist/emergency care physician).

As plaintiff pointed out, Corizon does not identify any legal authorities that characterize correctional facilities as a distinct context for purposes of medical malpractice law, where a unique standard of care applies.  *See* ECF 41 at 27.  Nor does defendant attempt to explain why, as a matter of common sense or real-world practice, this would be so.  Further, defendant does not challenge that Dr. Copeland's credentials as a board-certified urologist are unrelated to the care Corizon provided plaintiff or otherwise insufficient.  Accordingly, I reject the claim that Dr. Copeland is not qualified to opine on this case, under Maryland law.

### IV.  Conclusion

For the foregoing reasons, I shall deny the Motion (ECF 36).

An Order follows.


Date: July 23, 2020                                    _____/s/_____

                                                       Ellen L. Hollander
                                                       United States District Judge